UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION


OCEANEERING INTERNATIONAL, INC.,     :     DOCKET NO. 05-258
                                     :
                 Plaintiff,          :
vs.                                  :     August 14, 2008
                                     :
GRI SIMULATIONS, INC., ET AL.,       :
                                     :
                 Defendants.         :     Lafayette, Louisiana
_____


REPORTER'S OFFICIAL TRANSCRIPT OF THE HEARING
BEFORE THE HONORABLE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT JUDGE.


APPEARANCES:

FOR THE PLAINTIFF:          GARY R. MAZE
                            Duane Morris
                            3200 Southwest Frwy., Ste. 3150
                            Houston, TX  77027

                            RICHARD T. REDANO
                            Duane Morris
                            3200 Southwest Frwy., Ste. 3150
                            Houston, TX  77027


FOR THE DEFENDANTS:         GREGORY R. MIER
                            Onebane Law Firm
                            P.O. Box 3507
                            Lafayette, LA  70502-3507

                            GREGORY K. MOROUX
                            Onebane Law Firm
                            P.O. Box 3507
                            Lafayette, LA  70502-3507


REPORTED BY:                LARAE BOURQUE, RPR, CRR
                            United States Court Reporter
                            800 Lafayette Street, Ste. 3103
                            Lafayette, Louisiana  70501

```
 1                    P R O C E E D I N G S
 2                         (Call to order of the court.)
 3          THE COURT:  The first matter up is Oceaneering.  Let's
 4   get the appearances for the record.
 5              MR. REDANO:  Richard Redano for plaintiff, Oceaneering.
 6              THE COURT:  I'm sorry.  Say again.
 7              MR. REDANO:  Richard Redano for plaintiff, Oceaneering.
 8              THE COURT:  Okay.
 9              MR. MAZE:  Gary Maze for plaintiff, Oceaneering.
10              THE COURT:  Okay.
11              MR. MIER:  Good morning, Your Honor.  Greg Mier
12   representing GRI Simulations, Incorporated, and Stephen Dodd, the
13   defendants, and I'm joined by my partner, Greg Moroux.
14              THE COURT:  All right.  Plaintiff filed first.
15              MR. REDANO:  Your Honor, I'll argue the motions in the
16   numerical order filed if that pleases the Court.
17              THE COURT:  All right.
18              MR. REDANO:  The first one is Number 139, which is the
19   motion to dismiss the declaratory judgment claim of copyright
20   non-infringement for lack of subject matter jurisdiction.  We
21   filed this claim in response to the demand letters that we
22   received from GRI in September and October of 2003 accusing us of
23   infringing their copyrights.
24              At the time they represented that they had no Canadian
25   or U.S. copyright registrations.  We later learned that they
```

1    obtained U.S. copyright registrations in 2004.  So we took

2    discovery in this case to see if they had applied for any U.S.

3    copyright registrations.

4         Those document requests were in our second set of

5    requests for production.  Unfortunately we had to come to this

6    Court three times to compel production from GRI or responses to

7    those second set of requests.  It caused doubt as to whether we

8    were getting all the documents.

9         So when we finally reached the close of discovery and

10   we had no applications for copyright registration from GRI, we

11   filed this motion to dismiss for lack of subject matter

12   jurisdiction believing that although the Fifth Circuit or the

13   Supreme Court has never addressed the question as to whether the

14   jurisdictional requirements under 17 U.S.C. 411 for filing a

15   copyright infringement action applied to a declaratory judgment

16   of non-infringement, we thought the Fifth Circuit might rule as a

17   variety of district courts had.

18        In our case we cited the Northern District of

19   California District Court decision in *Optovue v. Carl Zeiss* back

20   in -- it was decided in October of 2007 and that court noted that

21   there was no appellate controlling authority that it could find.

22        It found that one of the cases cited to it by the

23   parties before it found you didn't need to have a copyright

24   application filed to sustain jurisdiction for a declaratory

25   judgment action while two other district court decisions held the

 1    opposite way.

 2              So in view of the fact that the majority of district

 3    courts that had addressed the issue felt that the declaratory

 4    judgment for copyright non-infringement was subject to the same

 5    subject matter jurisdiction requirements as one for infringement,

 6    we moved to dismiss this case in good faith on the date discovery

 7    closed and we'd like our motion to be granted and GRI's request

 8    for attorney fees to be denied.

 9              THE COURT:  All right.  Mr. Mier.

10              We're going to go one by one.

11              MR. REDANO:  All right.

12              MR. MIER:  Your Honor, Record Document 139 is a motion

13    to dismiss Count 4 in Oceaneering's amended complaint, second

14    amended complaint.  Count 4 is a request -- or they seek a

15    declaration that they did not infringe the copyrights of my

16    client.

17              In order for you to decide whether or not Oceaneering

18    infringed the copyrights of my client, you need to have two

19    things to compare to see if one thing is copied from the other,

20    and those two things in this case are the source code developed

21    by my client before September, 2001, and the source code

22    developed by Oceaneering after September, 2001.

23              Now, in order for you to make a ruling on copyright

24    non-infringement, you need both of the source codes to compare

25    one to the other.  You cannot make a ruling on copyright

1    non-infringement in this case because the source code developed

2    by Oceaneering has long ago been destroyed.  In fact, it was

3    destroyed before Oceaneering filed their lawsuit in Texas and

4    before they filed the lawsuit in your court, and they have

5    continued to destroy the source code that they have developed

6    even after filing the -- filing this case in your court.

7            Now, they don't have the evidence necessary for you to

8    make a ruling or for us to defend ourselves.  So what they're

9    doing now is they're trying to sneak out of the back door of the

10   courthouse by asking you to dismiss Count 4 based on a

11   jurisdictional statute that would apply if my client had come

12   into your court and filed a copyright infringement claim.  That

13   has not happened.

14           My client never intended to come to Louisiana to file a

15   copyright infringement claim.  They never intended to go to Texas

16   to file a copyright infringement claim.  They have filed their

17   claims in Canada, which is where they're from, which is where all

18   the actions in this case have occurred.

19           The jurisdictional statute that applies in this case is

20   28 U.S.C. 2201.  That's what provides you jurisdiction to hear

21   Oceaneering's declaratory judgment action.  They pled that

22   statute in their pleading.  It's the jurisdictional statute that

23   applies.  So you do have jurisdiction to hear this claim, but you

24   don't have the evidence to hear the claim.

25           So we're asking you to dismiss the case and award us

```
 1    attorney fees for having to defend this frivolous lawsuit because
 2    they knew that the evidence wouldn't be available for you to make
 3    a ruling.  So that's why we filed a motion for summary judgment,
 4    and we're asking you to deny theirs, their motion to dismiss, and
 5    grant ours.
 6              THE COURT:  All right.  Do you want to respond to that?
 7              MR. REDANO:  Yes, Your Honor.
 8              In the absence of subject matter jurisdiction, there's
 9    no basis to decide the merits, which is what opposing counsel
10    just argued, in the case.  We filed the declaratory judgment
11    action in good faith when we were facing allegations of copyright
12    infringement.
13              THE COURT:  Well, the reason these allegations of
14    copyright infringement -- correct me if I'm wrong and I think
15    you've admitted it in your papers -- is that you hired the two
16    guys who came up with the formula.  They brought the formula
17    here.  You now have basically the same thing they had and then
18    they destroyed the formula.
19              Is that correct?
20              MR. REDANO:  Well, Your Honor, we're talking about a
21    source code, and what was destroyed back in the summer of 2003
22    was the extra copies of that on discs.  They didn't destroy the
23    copies on the computers they were working on.
24              So it's not true that all of the source code that was
25    in existence at that time was destroyed.  There's still the
```

1   copies that they actually were working on.  They destroyed excess

2   copies on discs and that testimony is undisputed in this case.

3          All of the case law that we've cited says that

4   17 U.S.C. 411 applies to a declaratory judgment action of

5   non-infringement, and if Mr. Mier comes before this Court and

6   says, now that discovery is closed, we admit we never intended to

7   sue them in the United States, there's no actual and justiciable

8   controversy to sustain jurisdiction.

9          Furthermore, 28 U.S.C. Section 2201 doesn't create

10  independent subject matter jurisdiction.  It only allows a party

11  to seek a declaratory judgment action if there's a statutory

12  basis.

13         And we've got an additional statute, 17 U.S.C. 411,

14  where the courts have said that will apply to a declaratory

15  judgment of non-infringement although the Supreme Court or the

16  Fifth Circuit have not addressed that issue.

17         THE COURT:  All right.  I'm going to grant the

18  defendant's motion in this matter and dismiss Count Number 4 and

19  assess attorney's fees in favor of the defendant, GRI.

20         Next.  Number 140.

21         MR. REDANO:  Yes, Your Honor.

22         This is our motion for partial summary judgment with

23  respect to Counts 3 and 5 through 8.  Count 3 is a declaratory

24  judgment claim against GRI that certain claims under the Texas

25  Uniform Trade Secrets Act or the LUTSA are barred by limitations

1    or prescription.  We filed this in response to the allegations

2    that they made against us in September of 2003, and that letter

3    is Exhibit A to our motion.  The limitations period under the

4    LUTSA is three years.  That is undisputed.

5             In response to Interrogatory Number 10(b), they

6    admitted that they first anticipated being -- anticipated being

7    in litigation with us over trade secret claims in May of 2003,

8    and that interrogatory is Exhibit E to our motion.

9             Then they even conceded on Page 9 of their response

10   brief that when Mr. Dodd went to the OTC in Houston in May of

11   2003, he felt that GRI was in anticipation of litigation with

12   Oceaneering.  Therefore, we ask that this Court grant our motion

13   for partial summary judgment with respect to Count 3.

14            THE COURT:  All right.  Response.  Do you want to

15   address -- that's Counts 3 and 5 through 8; is that correct?

16            MR. REDANO:  Yes, Your Honor.  I'll go through and

17   argue the remaining counts.

18            Okay.  Next with respect to Count 5, we seek a

19   declaratory judgment that 13 aspects of GRI's VROV system are not

20   protected under the copyright laws of the United States.  They're

21   all listed in a table that appears on Page 5 of our reply.  The

22   first nine of those deal with aspects of their computer

23   architecture in which they claim copyright protection.  We've

24   shown that what they've described is not protectable under 17

25   U.S.C. Section 102(b), which says methods and processes are not

1    protectable, and they're claiming protection in methods and

2    processes.

3            All nine of those items were identified by GRI in

4    Interrogatory 16 where we asked them to identify the elements of

5    their computer architecture in which they allege that we have

6    infringed their copyright.  Interestingly, the term "source code"

7    or "software" appears nowhere in that interrogatory response.

8    We've had years of discovery in this case.  They've never

9    supplemented that interrogatory response to claim computer

10   architecture or source code.

11           And then we seek summary judgment on this count on four

12   remaining elements which are images that appear on their

13   simulator that are realistic depictions of things such as sonar

14   or ROV.  We've cited case law that says a realistic model of

15   something that's real is not protectable under the copyright

16   laws.  At the time we briefed the case, we cited the district

17   court decision in *Meshwerks* and that decision has recently been

18   affirmed by the Tenth Circuit.  Therefore, we move for summary

19   judgment on Count 5.

20           THE COURT:  Okay.

21           MR. REDANO:  Moving on to Count 6, it seeks a

22   declaratory judgment of copyright misuse and it's

23   straightforward.  If they claim copyright protection in some

24   aspect of their computer architecture in which you don't get

25   copyright protection under U.S. law, that's a form of misuse.

1    We've thoroughly briefed that issue in our pleadings and it's the

2    same argument as with respect to Count 5.  They're claiming

3    copyright protection in things such as methods or processes,

4    which are not protectable under Section 102(b) of the Copyright

5    Act, and, therefore, we move for summary judgment on that count.

6         They've alluded to a lawsuit they filed in Canada, but

7    whatever protection they can get under Canadian copyright law in

8    a Canadian lawsuit is not dispositive of the scope of copyright

9    protection in the United States.

10        Next, moving on to Count 7, there we seek a declaratory

11   judgment that no cause of action under Section 43(a) of the

12   Lanham Act exists for the failure to attribute authorship in

13   their VROV software.

14        We filed this declaratory judgment action in response

15   to their October, 2003, letter to us which accused us of failing

16   to attribute authorship to them in their software at a trade

17   show.  And under the Supreme Court's decision in *Dastar* as well

18   as its progeny, which we've briefed, you just can't bring a claim

19   under Section 43(a) of the Lanham Act for failure to attribute

20   authorship in a work subject to copyright.  They've not disputed

21   that case law.

22        Again, they've alluded to their Canadian lawsuit, but

23   whatever rights they have in Canada under Canadian law don't

24   impact the rights they have in the United States under our laws.

25   Therefore, we move for summary judgment on Count 7.

1            Count 8 seeks a declaratory judgment that any claims

2    that they might assert against us under Section 43(a) of the

3    Lanham Act for alleged acts of unfair competition at a trade show

4    in January of 2000 are barred by limitations.  Again, we brought

5    these claims in response to their October, 2003, letter to

6    Oceaneering's counsel alleging that we had falsely designated the

7    origin of their software.

8            As stated in our brief, there's a one-year prescription

9    period that applies to Section 43(a) Lanham Act claims.  They

10   have not disputed that.  We submitted evidence of their own

11   admissions that they were at this trade show in January of 2000

12   and they corrected the alleged misrepresentations; therefore,

13   they had knowledge of their alleged cause of action.  They

14   haven't filed suit within the prescription period, and,

15   therefore, that claim is barred.

16           They've submitted no evidence to raise a genuine issue

17   of material fact as to when they were in apprehension of the suit

18   for unfair competition and we ask that the Court grant our

19   motion.

20           Thank you, Your Honor.

21           MR. MIER:  Your Honor, Mr. Redano refers to an October,

22   2003, letter and suggests that that letter is the reason why

23   Oceaneering came down to the United States and filed these DJ

24   actions sort of to beat the -- to beat my client to the

25   courthouse so to speak.

1            In the October, 2003, letter, my client mentioned to

2      Oceaneering that they believed that Oceaneering had infringed

3      their copyrights based on the source code.  That's not the end of

4      the story.  That October, 2003, letter was not all that my client

5      did.  They sent the letter and there was an exchange of a few

6      more letters and then my client filed a lawsuit.  They filed suit

7      in Canada based on everything that was mentioned in the letter.

8            There was no indication whatsoever and Oceaneering had

9      no reason to believe that my client was going to come down here

10     -- my Canadian client, St. John's, Canada, 3,000 miles away, was

11     going to come down to Texas or Louisiana and file lawsuits, the

12     same kind of lawsuit that they filed in Canada, to seek relief

13     under United States laws.  They weren't seeking relief under U.S.

14     copyright law.  They were seeking relief under Canadian law and

15     they filed their lawsuit.

16           Oceaneering didn't file their DJ actions in response to

17     that October, 2003, letter.  They filed their lawsuit in response

18     to the lawsuit that my client filed.  They're trying to

19     economically punish my client for filing the lawsuit in Canada by

20     doubling the litigation expenses for all of the claims that are

21     pending in Canada.

22           They've come down here and asked you, for example, to

23     give them a declaration that the trade secret misappropriation

24     claims under Louisiana law are barred.  Well, they knew that

25     coming in.  They knew that they were barred because we hadn't

1    filed a lawsuit in Louisiana.  We weren't going to.  They had no

2    reason to believe we were going to.

3            The same thing with Count Number 5.  They seek a

4    declaration of no copyright protection under the copyright laws

5    of the United States.  Well, we're not seeking protection under

6    the copyright laws of the United States.  We filed our lawsuit in

7    Canada.  They had no reason to believe that we would have come

8    down here to file a lawsuit in Louisiana or Texas.

9            The same thing with Count 6, 7 and 8.  They had no

10   reason to file -- Count 7 and 8 deal with the Lanham Act.  They

11   had no reason to believe that we were asserting claims under the

12   Lanham Act.  We had taken care of our claims in Canada.

13           So we have filed a motion for summary judgment on all

14   of these counts, Counts 3, 5, 6, 7 and 8.  We ask you to deny

15   their motion for summary judgment because they had no reason to

16   come into this court and waste your valuable resources to begin

17   with and we ask that you grant attorney's fees on those counts as

18   well.

19           THE COURT:  Okay.

20           MR. REDANO:  Your Honor, at the very outset of this

21   case, the first motion that GRI filed was one to dismiss for a

22   variety of reasons, one of which was exactly the argument we've

23   just heard, and that is they filed this lawsuit in Canada and the

24   Canadian lawsuit could dispose of all of these issues.

25           We argued before you, and I made the point, that they

1   demanded that we stop selling our software in the United States.

2   When you look at those letters they sent to us in September and

3   October of 2003, it says to stop selling your software, which is

4   activity that occurs in the U.S., and I explained that whatever

5   rights they have in Canada and whatever injunctive relief they

6   can get in Canada should be decided by a Canadian judge, but we

7   wanted a U.S. judge to decide the applicable rights under U.S.

8   copyright law or U.S. unfair competition law.

9           THE COURT:  Unfair competition?

10          MR. REDANO:  Yes, Your Honor.

11          THE COURT:  I get confused with that because it appears

12  to me from everything that everyone has filed that the two

13  individuals that your company hired brought in the source --

14          MR. MIER:  Source code.

15          THE COURT:  -- the source code, and three months later

16  or so they developed the exact same piece of equipment when they

17  were working for y'all, something that took them years to

18  develop.

19          So where's the unfair competition here?

20          MR. REDANO:  The allegation of unfair competition is

21  that at a trade show in Houston in 2000 in a simulator that we

22  bought from them and displayed, that we failed to attribute

23  authorship in that source code to them and there's no claim for

24  that under U.S. law.

25          Now, they ran to Canada --

```
 1              THE COURT:  They haven't made a claim for that under
 2      U.S. law, have they?
 3              MR. REDANO:  They --
 4              THE COURT:  In fact, they say they're not coming to the
 5      United States to litigate.  They want to litigate in Canada where
 6      all of this stuff began.
 7              MR. REDANO:  They say that now.  However, Record
 8      Document 35 is the Rule 26(f) report, which is signed by their
 9      counsel.  It was jointly filed in May of 2006.  And it states,
10      quote, GRI anticipates filing counterclaims against Oceaneering
11      and others as briefly described above, and what they described
12      above are all their theories of trade secret misappropriation and
13      copyright infringement and unfair competition.
14              So at the outset the first communication we get from
15      them is from their law firm with offices in the U.S. and Canada
16      telling us to stop all our activities, including activities in
17      the U.S., and then even after we filed this case and we were
18      roughly 16 months into this case, they file another pleading in
19      this court saying we're going to file counterclaims against
20      Oceaneering.
21              And we brought these declaratory judgment actions, Your
22      Honor, so that we can get a ruling from a U.S. court and clear
23      the cloud over the title to our activities in the U.S.  All these
24      claims they're making about software ownership, that's being
25      disputed in Canada right now under Canadian law.
```

1          And we filed Mr. Grzetic's declaration, which is

2    Exhibit B, to our response to the defendant's motion for summary

3    judgment that has attached to it an employment contract

4    controlled by Canadian law with clauses in it that say the ROV

5    software and procedures belong to him and the rest of the clauses

6    in that contract don't apply.

7          Now, we've avoided litigating that ownership agreement

8    here because it's controlled by Canadian law, but it in no way is

9    a foregone conclusion that our people took their software.  And

10   certainly we didn't develop a functional product in three months.

11   It took much longer than that and we've got the documentation to

12   back up the process that it took to develop a product that we

13   could take to the marketplace.  It was well over a year before

14   they could even go to a trade show with a demonstration product.

15         So they've got a lawsuit in Canada under Canadian law

16   where a Canadian judge will decide their rights, but we don't

17   believe a Canadian judge can issue an injunction in the United

18   States and we brought this action to clear the controversy that

19   they had created.  They've never offered us a covenant not to

20   sue, and up until these summary judgment motions got filed, Your

21   Honor, the last word from them in a written pleading was they

22   intend to file counterclaims against us, which totally

23   contradicts the story that was just presented when opposing

24   counsel spoke to the Court.  Thus, we ask that the Court grant

25   our motion because there's no dispute as to the existence of a

1    controversy or the substantive issues underlying it.

2              THE COURT:  Mr. Mier.

3              MR. MIER:  Real briefly, Your Honor.

4              We mentioned that we were going to file counterclaims after the

5    lawsuit had already been filed.  There was nothing before this

6    lawsuit had been filed to indicate to Oceaneering that we were

7    going to file any claims in the United States.

8              Mr. Redano mentioned the hearing on a motion to dismiss

9    we filed back in 2005.  If Your Honor would have known back then

10   what you know now about the destruction of evidence and the

11   wrongdoing that Oceaneering did in Canada, you would have granted

12   that motion to dismiss back in 2005 and we wouldn't be here

13   today.  We would have saved three years of pointless litigation,

14   but Oceaneering didn't tell you that they had destroyed the

15   evidence.  They didn't give you the full story.  They held their

16   breath, hoped that you wouldn't grant the motion back in 2005,

17   and here we are today after years of pointless litigation.

18             I think that -- I think you're on the right track, Your

19   Honor.  You should dismiss their counts and grant our motion for

20   summary judgment on those counts and award us our attorney's

21   fees.

22             THE COURT:  All right.  I'm going to deny Oceaneering's

23   motion for summary judgment and grant GRI's motion for summary

24   judgment on Counts 3, 5, 6, 7 and 8, and I'm going to award costs

25   and attorney fees to GRI.

1          MR. REDANO:  Next, Your Honor, is our motion for

2    summary judgment on Counts 1 and 2, which is Docket Number 142.

3          Count 1 seeks a declaratory judgment of no breach of

4    the letter agreement which is attached as Exhibit A to the second

5    amended complaint.  We served GRI with an interrogatory asking it

6    to identify any agreements that we had breached.  They identified

7    none.

8          We brought this declaratory judgment claim because they

9    wrote to us in September of 2003 accusing us of violating various

10   agreements.  When we wrote back to them and said which ones, they

11   responded in October of 2003 saying, well, you should just know

12   what agreements we're talking about.  This was the only written

13   agreement between the parties.

14         So we brought this declaratory judgment claim, and then

15   after we brought the initial claim, GRI files the Rule 26(f)

16   report signed by its counsel saying they intend to file

17   counterclaims against us, and that Rule 26(f) report expressly

18   mentions a breach of the letter agreement.

19         Since they've got the burden of proof on a breach of

20   contract and they failed to identify any breach of the letter

21   agreement, we believe it's appropriate for the Court to grant

22   summary judgment.

23         Next I'll move on to Count 2 which is a declaratory

24   judgment on trade secret misappropriation claims that they've

25   alleged against us dealing with 28 of their trade secrets, and

1   they're listed in the table on Pages 3 through 5 of our reply.

2           The first four of those alleged trade secrets are items

3   in which their sole 30(b)(6) representative, Mr. Dodd, testified

4   in a way that indicated there was no controversy.  As an example,

5   when we asked him, does GRI still contend that the computer

6   hardware specification is a trade secret, he responds, not any

7   longer.

8           Now, the next items in the list of trade secrets are

9   5 through 12 that appear on Page 4 of our reply, and we've moved

10  to dismiss those because when we tried to get information from

11  their sole 30(b)(6) representative about, well, what are these

12  trade secrets, what do these words mean that you're using, we

13  couldn't get any meaningful response.

14          Just as an example, when we asked Mr. Dodd, what does

15  the term "high level design" refer to in your bullet point that

16  identifies your trade secret, he responds, quote, I don't really

17  know.

18          Now, they chose to produce Mr. Dodd as their sole

19  30(b)(6) witness in response to a notice that asked them to have

20  somebody who could testify on all responses and objections to

21  discovery by GRI, and one of those responses was Interrogatory

22  Number 6 where we asked them to give us a detailed description of

23  what trade secrets they were claiming were misappropriated.

24          So it's appropriate that the Court grant us summary

25  judgment on this claim because when we tried to take discovery

1 and find out what these things mean, we couldn't get any

2 meaningful answer.

3          Now, the remaining issues or alleged trade secrets are

4 Items 13 through 28 which are listed on Pages 4 and 5 of our

5 reply.  We submitted evidence that GRI failed to take reasonable

6 precautions under the LUTSA to maintain the secrecy of those

7 alleged trade secrets.

8          Examples of that evidence was the demonstration of

9 their own system at numerous trade shows, the distribution of

10 brochures that describe the details of their system, and even a

11 paper they presented at one of these trade shows that described

12 in great detail how they used various computers to perform the

13 various functions in their simulator.

14          THE COURT:  Didn't they develop this before y'all?

15          MR. REDANO:  Yes.  They had a simulator before we did.

16          THE COURT:  And didn't it do the exact same thing that

17 yours does?

18          MR. REDANO:  Ours has more functionality, but they

19 simulate an ROV.  That doesn't make it a trade secret when you go

20 to a trade show.  They're claiming trade secret protection in the

21 very things that they demonstrate to people at trade shows and

22 that can't be a trade secret.  Once you tell the world, look at

23 my simulator, look at these things it does, and you present a

24 brochure and a paper saying look at all these features, you can't

25 then say that's a trade secret.  You've dedicated that to the

1    public.

2         Now, you could get a patent to protect it, there may be

3    some other theory, but you can't use trade secret law once you

4    make a marketing demonstration or display.  It's undisputed that

5    they went to these trade shows and they showed all these things,

6    that they distributed their brochures, that they even sold -- we

7    bought five of their simulators that we could use and see how it

8    functioned.

9         Then they turned around and said, well, those things

10   that we sold to you that you can use and use it all day long,

11   they're trade secrets, and under Louisiana law where you've got

12   to take reasonable protection or reasonable precautions to

13   protect your trade secrets, it doesn't qualify as a trade secret.

14   So we ask the Court to grant our motion.

15        MR. MIER:  Your Honor, the trade secrets are embedded

16   in the source code.  It's undisputed in this case that the source

17   code has not been disclosed to the public, the source code

18   developed by GRI.

19        Now, Mr. Redano mentioned the testimony of our 30(b)(6)

20   witness with respect to what's trade secrets, that sort of thing.

21   The two people who know the most about the trade secrets that

22   were developed before September, 2001 -- that's the computer

23   source code in question on GRI's side of it.  The two people who

24   know the most about that source code are now employed by

25   Oceaneering.  They left GRI in September, 2001, and joined

```
 1    Oceaneering to develop the same kind of system that they had
 2    developed for GRI.
 3            So those two guys and a third person were the only
 4    technical staff that GRI had onboard before September, 2001.
 5    Oceaneering hired them all away.  What that left with GRI was a
 6    salesman and a president.  That's all they had left.  They had to
 7    totally regroup.
 8            So when they said produce your 30(b)(6) witness, the
 9    only guy who was working there at the time who knew the most
10    information about what was going on was the salesman.  That's all
11    we had.  And now they're saying, well, Judge, because that
12    salesman didn't know about the technical details of the source
13    code and, well, you ought to grant our motion, the people who
14    know the most about the source code are employed by Oceaneering.
15    Go ask your own guys.  Get them to tell you what trade secrets
16    were included in GRI's source code.  It's the source code, that's
17    what we're dealing here with, and there's no dispute that the
18    source code developed by GRI is a trade secret.
19            Let's see.  With respect to the letter agreement, we
20    never accused Oceaneering of breaching that letter agreement.
21    There's no documents that reference the letter agreement.  When
22    they asked us to produce those documents, we didn't have anything
23    to produce because we never did accuse them of breaching it.
24    They knew that coming into this case yet they filed this Count 1
25    saying, Judge, we want you to declare that we didn't breach the
```

1    letter agreement.  We never accused them of doing that.  Again,

2    this is another wasteful count.  It has wasted our time for four

3    years.

4            With respect to Count Number 2, they seek a declaration

5    of no trade secret misappropriation under Louisiana law.  Again,

6    Judge, in order to determine whether or not there's trade secret

7    misappropriation, you need Oceaneering's source code developed by

8    our two ex-employees soon after they left our company.

9            I asked Mr. Grzetic during his deposition, Mr. Grzetic,

10   if the judge in the Louisiana case wanted to look at the source

11   code developed by you soon after you left GRI to join

12   Oceaneering, would he be able to do it?  Answer:  No.

13           So I don't know what Mr. Redano is talking about this

14   source code being available.  They certainly haven't produced it

15   in this case.  And Mr. Grzetic, the one who developed it, said he

16   destroyed it because of security concerns at Oceaneering's

17   facility in St. John's, Canada.  A lot of the code was being kept

18   at his home, but he destroyed that, too, because of security

19   concerns at their facility in Canada.

20           So, again, you don't have what's necessary to rule on

21   Count 2.  The evidence is not there.  Therefore, we ask that you

22   grant our motion, deny their motion, and award our attorney's

23   fees on Counts 1 and 2.

24           THE COURT:  All right.

25           MR. REDANO:  I'll just respond briefly, Your Honor.

1          The 30(b)(6) deposition that we took was in the summer

2     of 2007 roughly seven years after the employees left and went to

3     work for Oceaneering.  They stayed in business producing

4     simulators, writing simulator source code and selling simulators

5     for seven years.

6          So they've got a technical staff of people who make

7     models, people who write source code, but they chose to produce

8     only Mr. Dodd.  And also when we said, well, what are your trade

9     secrets, in Interrogatory 6 they never identified the source

10    code.  They identified much higher level things like the fact

11    that we use a Windows Operating System or an Ethernet protocol,

12    and suddenly they changed their story at the very end of

13    discovery and claimed that, oh, no, this case is all about source

14    code.  That's not consistent with their interrogatory responses,

15    Your Honor, and they shouldn't get a windfall by changing at the

16    very last minute what's been the focus of this case based on the

17    discovery they've given to us.

18         And if they can stay in business for seven years

19    producing simulators and selling simulators, they could have

20    produced a 30(b)(6) witness who could answer a simple question

21    like what do you mean when you talk about your graphics method.

22    We couldn't get an answer to that, and we ask that the Court

23    grant our motion.

24         THE COURT:  All right.  I'm going to deny Oceaneering's

25    motion for summary judgment and grant GRI's motion for summary

```
 1    judgment and award costs and attorney fees on Counts 1 and 2.

 2    That's Document Number 142.

 3              MR. REDANO:  Your Honor, the next motions numerically

 4    are their summary judgment motions.  I'm not sure that there's

 5    anything left.

 6              THE COURT:  All right.  You're right.

 7              MR. MIER:  Well, Judge, just to be clear, our motion

 8    for summary judgment asks you to dismiss all ten counts filed by

 9    Oceaneering.  Their motions to dismiss and motions for summary

10    judgment just covered Counts 1 through 8, but, I mean, I'm ready

11    to argue for a dismissal of Counts 9 and 10 for the same reasons.

12              THE COURT:  You're here.  Why not argue it?

13              MR. MIER:  Well, I mean, for the same reasons that you

14    have granted the other -- our other motions, our other motion for

15    summary judgment on Counts 1 through 8, you should grant our

16    motion for summary judgment on Counts 9 and 10 as well.

17              Counts 9 and 10 involve trade secret misappropriation

18    claims filed by Oceaneering against GRI and Stephen Dodd a couple

19    of years after they filed the original complaint.  The original

20    complaint just included Counts 1 through 8.

21              And, again, if you would have known back when we filed

22    our initial motion to dismiss what you know now, you would have

23    dismissed Counts 1 through 8 and we wouldn't even be here, but

24    because Oceaneering did not tell you that they had destroyed the

25    evidence and did not give you the full story of what transpired
```

1    in this case, they were allowed to continue litigating the case

2    and they took advantage of that by adding Counts 9 and 10 in an

3    amended complaint.

4           Now, they obviously failed to do their homework before

5    filing Counts 9 and 10 because they're alleging that we

6    misappropriated trade secrets that were clearly displayed on

7    their website back during the pertinent time period.

8           We had an expert do the investigation, look and see

9    what was in existence back in 1998, which is the pertinent time

10   period.  He found industry trade publications, he looked at

11   Oceaneering's website, and he saw that the trade secrets they're

12   alleging in this case were right there plain as day for everyone

13   to see.

14          So our position is that, first of all, their trade

15   secret misappropriation claims, Counts 9 and 10, are merely

16   window dressing trying to turn up the heat on my guys in Canada

17   to try to make them crumble under the pressure of this

18   litigation.

19          Second of all, the alleged trade secrets are not trade

20   secrets because they're clearly displayed on their websites and

21   in trade publications.  Therefore, we ask that you grant our

22   motion for summary judgment on all counts, including Counts 9 and

23   10, and we ask that you award us our attorney's fees and costs.

24          MR. REDANO:  Again, Your Honor, Counts 9 and 10 are not

25   declaratory judgment claims.  Once we took discovery in this

1    case, we learned for the first time that the specification that

2    they were sending out to their prospective customers and their

3    licensees were basically a clone of the specification that we had

4    provided to them at the outset of our commercial relationship.

5              We've provided deposition testimony from

6    Mr. Strivastava stating that he informed Mr. Dodd that the

7    information he was going to give him would be confidential and it

8    was to be treated accordingly.  We've submitted letters from

9    Mr. Dodd in January and February of 1999 saying that Oceaneering

10   could submit information to GRI or Geo-Resources, its

11   predecessor, on a confidential basis.  This evidence raises a

12   genuine issue of material fact as to whether this information was

13   confidential.

14             The website pages opposing counsel referred to are not

15   before the Court in any of these summary judgment pleadings, and

16   those website pages do not go to the totality of all of the

17   information that was in the specification that we provided to GRI

18   under confidential circumstances.  The evidence is undisputed

19   that they then took our specification and cloned it, sent it out

20   to their customers for commercial gain.

21             THE COURT:  Oh, no.  That's disputed.  It's undisputed

22   that whatever they sent you, you went ahead and reproduced and

23   sent it to clients?

24             MR. MIER:  Well, we sent various things to other

25   customers, we're not denying that, but what we're saying is that

```
 1    what we sent to other customers did not contain the trade secrets
 2    of Oceaneering.
 3              And, Judge, I'd like to make this point.  They're
 4    accusing us of trade secret misappropriation that began before
 5    the two employees left GRI to join Oceaneering.  Now he's
 6    standing before you and saying, Judge, for the first time we
 7    learned during discovery that they are sending our trade secrets
 8    to other people.  Hey, their employees were involved in the
 9    misappropriation back before 2001.  How can he now say that this
10    is the first time they know about it?  They knew from the outset.
11              THE COURT:  Okay.
12              MR. REDANO:  Your Honor, we never had copies of what
13    they were sending to other companies, many of whom were our
14    competitors, and the technical people we hired were not the
15    marketing people who sent out the proposals.
16              We've submitted testimony from Mr. Dodd stating that he
17    prepared the proposals, we've submitted the proposals, and we've
18    identified segments in them which are the same as information
19    that they received from us in 1999.  That evidence we've
20    submitted is sufficient to raise a genuine issue of material fact
21    on both Counts 9 and 10, and there's enough genuine issues of
22    material fact that their motion for summary judgment on those two
23    counts should be denied.
24              THE COURT:  Okay.  Any brief response?
25              MR. MIER:  Just briefly, Judge.
```

1          Our expert is the only expert in this case who's done

2     the proper investigation to determine whether or not

3     Oceaneering's alleged trade secrets are not trade secrets.  His

4     conclusions are that they are not trade secrets.  This is just

5     general information known in the industry back at the pertinent

6     time period.

7          In addition, Judge -- well, that's the only point I

8     want to make.  Thank you.

9          THE COURT:  The Court is going to grant Stephen Dodd

10    and GRI's motion for summary judgment and dismiss Counts 9 and 10

11    with costs and attorney fees against Oceaneering.

12          We have a motion to seal or a sealed motion in limine.

13    That's Document Number -- I was just talking about Document

14    Number 146, Gary.  This is Document Number 166.  That would be

15    moot at this time.

16          Sanctions.  I'm going to deny Document Number 179 for

17    sanctions that Oceaneering filed against GRI and Dodd.

18          Motion Number 180, sanctions to limit GRI's evidence

19    regarding GRI's alleged computer architecture by Oceaneering,

20    Inc., that's denied as moot after the rulings of the Court.

21          Document Number 187 to exclude selected evidence

22    relating to expert Paul Bradley by Oceaneering, that is denied as

23    moot.

24          Document Number 188, a Daubert motion to limit the

25    evidence of testimony, I'm going to deny that as moot.

1          Motion Number 191 is a motion to compel and sanctions.

2     That is denied as moot.

3          Document Number 192 the Court will deny as moot, and

4     that's it.

5          MR. MIER:  Judge, Document Number 146 --

6          THE COURT:  Document Number 146 is a summary judgment

7     filed by Dodd which I granted.

8          MR. MIER:  Okay.

9          THE COURT:  I granted and dismissed Counts 9 and 10,

10    granted and ordered attorney's fees, court costs and attorney's

11    fees on all motions.

12          This matter is in Canada.  That's where it is.  That's

13    where they filed.  That's where it should be.  I'll file with the

14    court, and a copy to opposing counsel, your request for costs and

15    attorney's fees.  The court will review the same and award

16    appropriate costs and attorney fees.  Thank you.

17          MR. MIER:  Thank you, Your Honor.

18          MR. REDANO:  Thank you, Your Honor.

19          THE COURT:  Gentlemen, I want you to know that I very

20    seldom award costs and attorney's fees, seldom, but I do think

21    that GRI and Dodd are correct in all of their assertions and I

22    came very close to ordering other sanctions besides these

23    sanctions.

24          Thank you.  Y'all are dismissed.

25                    (Whereupon, the hearing was adjourned.)

```
                   UNITED STATES DISTRICT COURT

                  WESTERN DISTRICT OF LOUISIANA

                  LAFAYETTE-OPELOUSAS DIVISION


OCEANEERING INTERNATIONAL, INC.  :
                                 :
vs.                              :    DOCKET NUMBER 05-258
                                 :
GRI SIMULATIONS, INC., ET AL.    :
_____


                      CERTIFICATE OF REPORTER

         I, LaRae E. Bourque, Official Court Reporter for the

United States District Court, Western District of Louisiana,

do hereby certify that the foregoing 30 pages are a true and

accurate transcript of the proceedings had in this matter,

as hereabove set forth, and that I have no interest of any

nature whatsoever regarding the ultimate disposition of this

litigation.

         I further certify that the transcript fees and format

comply with those prescribed by the Court and the Judicial

Conference of the United States.



                         /s/_____


                             LARAE E. BOURQUE, RPR, CRR
                             Official Court Reporter
```